UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF KENTUCKY
                      **CENTRAL DIVISION at LEXINGTON**

MIKE LAIRSEN,                      )
                                   )
     Plaintiff,                    )   Civil Action No. 5:09-67-JMH
                                   )
v.                                 )
                                   )
                                   )
JIM FIGUERADO and MIKE NEVES,      )   **MEMORANDUM OPINION AND ORDER**
                                   )
     Defendants.                   )

                       **     **     **     **     **

    This matter is before the Court upon the Motion for Summary Judgment filed by Defendant Jim Figuerado [Record No. 30]. Plaintiff Mike Lairsen has filed a Response [Record No. 33] stating his objections to the Motion, and Defendant has filed a Reply in further support of his Motion.[1]  This Motion for Summary Judgment is now ripe for consideration by this Court.

I.   **BACKGROUND**

    Grider Hill Marina sits on Lake Cumberland and consists of 750 wet slips, a ship store, lodging units, park cabins, rental houseboats, and 311 acres of land.  The U.S. Army Corps of Engineers (hereinafter, "Corps of Engineers") leases the land on which it sits to St. Thomas Glen Resorts, LLC (hereinafter, "STG").

---

    [1]   Defendant Figuerado has also filed a Motion to Enlarge Page Limitation for His Reply in Support of Motion for Summary Judgment [Record No. 40] and advises the Court that Plaintiff's counsel does not object to said Motion.  Defendant's Motion to Enlarge Page Limitation will be granted and his tendered Reply brief filed in the record of this matter by the Clerk.

STG was created by an individual named Guzman and several minority shareholders in order to purchase the marina from Tony Sloan in 2007. Plaintiff Lairsen acted as Sloan's broker when Sloan sold Grider Hill to STG. Lairsen subsequently approached Guzman, STG's majority shareholder, about the possibility of selling the marina in 2007. At the time, Guzman was under pressure to pay back personal loans secured by his ownership interest in STG. Guzman instructed Lairsen to find possible buyers but indicated that he would not pay any commission on any sale that might develop.

Lairsen had contacted Figuerado initially in 2007, introducing himself as a marina broker. The two men met for first time in Chattanooga, Tennessee, in 2007, to see if Figuerado would be interested in selling three marinas that he owned. Figuerado gave Lairsen a price at which he would be willing to sell his marinas, but there were no further discussions about the potential for such a transaction with Lairsen.

Lairsen would later contact Figuerado concerning STG.[2] Prior

---

[2]There is some dispute about what role Lairsen purported to play in the potential transaction for STG. Figuerado claims that Lairsen told him that he "had a listing agreement with Guzman" and that Guzman identified Lairsen to him as "the listing broker." According to Figuerado, Guzman had instructed Figuerado that he needed to go through Lairsen to get information about the marina. Lairsen has testified that he did not represent to Figuerado that he was Guzman's agent on the sale or anything whatsoever about his authorization from Guzman at that time but that he would subsequently advise Figuerado on multiple occasions that he would not be receiving a commission from Guzman. These facts are not material to the resolution of the matter before the Court today.

to his contact with Lairsen, Figuerado was not familiar with Grider-Hill Marina, owned by STG, and had never been to Cumberland Lake.  Although he received paperwork on STG from Lairsen at that time, Figuerado was not interested in purchasing Guzman's interest in STG because of the amount of cash required "up front" to buy out Guzman.  No discussions took place at that time concerning the potential for a partnership between Figuerado and Lairsen to purchase the interests in STG from Guzman.

Lairsen subsequently met with another, unnamed individual to see if he was interested in purchasing the interests in STG, providing him with "a package of information about the marina, the assets, the lake, and the financials," including historical and year-to-date financial data.  When the other individual lost interest in the deal, Lairsen again contacted Figuerado in late July or early August 2008.  At that time, Lairsen had learned that the bank would take much less cash at closing.  Figuerado gave Lairsen a list of things to be done for due diligence concerning the potential transaction.  Lairsen obtained the information, including financial data, some information on minority investors, information on the assets of the marina, the lease entered into by the marina with the Corps, and information concerning the slip count at the marina, with Guzman's approval and provided it to Figuerado through August of 2008.

According to Lairsen, it was proposed that he, Figuerado, and

3

Mike Neves would form a partnership to purchase the Grider Hill Marina and that, when asked what he expected from the deal, Lairsen told Figuerado that "by foregoing my commission, that I wanted a one-third interest and to manage the marina" and that the required "cash down would be much less." According to Lairsen, Figuerado responded, "Great." While the parties are at odds over whether an agreement for a partnership, joint venture, or even a commission was ever reached, there is no evidence of any written agreement for anything whatsoever between Lairsen and Figuerado or anyone else for that matter.

Ultimately, Figuerado would go forward with the deal to purchase Guzman's sixty-five percent share of STG on his own, but not from Guzman. On October 15, 2008, at the closing Figuerado's purchase of Guzman's membership interest in STG, Guzman refused to sign the required documents. Fifth Third Bank then foreclosed on the membership interests and sold them to Figuerado without Lairsen's participation.

## II. STANDARD OF REVIEW

A grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden to show the absence of a

4

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met simply by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. *Celotex*, 477 U.S. at 325.

When determining if summary judgment is proper, the court's function is not to weigh the evidence, but to decide whether there are genuine factual issues for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248; *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004). The evidence should be construed in the light most favorable to the nonmoving party when deciding whether there is enough evidence to overcome summary judgment. *Anderson*, 477 U.S. at 255; *Summers*, 368 F.3d at 885. While this Court must draw all inferences in a light most favorable to the plaintiff, summary judgment may be granted "if the record,

taken as a whole, could not lead a rational trier of fact to find for [the plaintiff]." *McKinnie v. Roadway Express*, 341 F.3d 554, 557 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**III. DISCUSSION**

    **A. Plaintiff Cannot Recover a Commission on the STG Transaction**

This matter places squarely before the Court the question of whether the sale of shares in a limited liability company which has, as one of its principal assets, a leasehold of real property constitutes a real estate brokerage such that an individual who negotiates the deal for another must be licensed by the Kentucky Real Estate Commission in order to recover a commission. For the reasons that follow, the Court concludes that licensure is required to serve as another's agent for such a transaction and that Plaintiff's claim for breach of contract in Count I of his Complaint must fail.

KRS 324.020(2) provides that "[n]o person shall practice real estate brokerage with respect to real estate located in this state unless . . . [t]he person holds a license to practice real estate brokerage." A real estate brokerage is defined as:

> . . . a single, multiple, or continuing act of dealing in time shares or options, selling or offering for sale, buying or offering to buy, negotiating the purchase, sale, or exchange of real estate, engaging in property management,

6

> leasing or offering to lease, renting or offering for rent, or referring or offering to refer for the purpose of securing prospects, any real estate or the improvements thereon for others for a fee, compensation, or other valuable consideration....

KRS 324.010 (1).

Where a transaction is, on its face, one for the sale of an going business concern, but the business has an interest in real estate as one of its major assets, Kentucky courts have announced the brightline rule that a person negotiating the sale for another party must be licensed as a real estate broker to be entitled to any commission on the sale. *Kirkpatrick v. Lawrence*, 908 S.W.2d 125, 128 (Ky. Ct. App. 1995). It makes no difference whether the business has as an asset a leasehold of property rather than ownership in fee simple or whether the transaction involves the purchase of a business which has personalty as assets as well as realty. *Id.* (personalty and leasehold); *Lockridge v. Hale*, 764 S.W.2d 84 (Ky. Ct. App. 1989) (personalty and realty). No less, an unlicensed agent barred from recovering a commission under contract cannot instead recover for his efforts in quantum meruit. *Louisville Trust Co. v. Monsky*, 444 S.W.2d 120, 121 (Ky. 1969).

In Count I of his Complaint, Lairsen avers that Figuerado and Neves retained him to act as buyer's broker and agent in negotiations for the purchase of Guzman's STG shares. According to Lairsen, he agreed to do so in exchange for a 1/3 interest of the

shares to be purchased and a salaried, management position at the Grider Hill Marina, all in lieu of the 3% cash commission that he would have ordinarily required to serve as a buyer's broker and agent with regard to such a transaction. He has complained that Figuerado breached the alleged agreement by "failing and refusing to pay" Plaintiff the agreed upon compensation upon Figuerado's purchase of the membership interests in STG. In Count III, Lairsen alleges that he is due payment under the doctrine of quantum meruit for "valuable services" provided to Figuerado and Neves, including advising them of the opportunity to purchase the membership interests in STG, introducing them to the principals in STG, and performing the due diligence required for the purchase transaction. Assuming for the sake of argument that the parties actually reached an agreement as averred by Lairsen and, at the very least, that Lairsen actually performed the services he avers, Plaintiff's claims for breach of any brokerage agreement or for recovery in quantum meruit must fail.

The parties do not dispute that STG had has one of its major assets a leasehold of the property on which the Grider Hill Marina was located. Nor do the parties dispute that Plaintiff Lairsen was not, at any relevant time, licensed as a real estate agent or broker in the Commonwealth of Kentucky. Applying Kentucky's strict prohibition on the recovery of a commission, whether by virtue of contract or under quantum meruit, by an unlicensed broker upon the

sale of a business which has real estate among its assets, Lairsen's claims against Figuerado for breach of contract and quantum meruit must fail.

Plaintiff argues, however, that this prohibition does not apply to situations where the transaction is for the purchase of shares of a limited liability company, even though it may hold an interest in real estate as one of its assets, because KRS 275.250 provides that LLC interests "shall be personal property." The Court disagrees.

The fact that LLC interests are personal property in the Commonwealth does not magically transform an LLC's leasehold or other interest in land from realty to personalty. Further, limited liability companies are formed "to create an entity that offers investors the protections of limited liability and the flow-through tax status of partnerships." *Lieberman v. Wyoming.Com, LLC*, 11 P.3d 353, 357 (Wy. 2000) (*quoting* Jonathan R. Macey, *The Limited Liability Company: Lessons for Corporate Law*, 73 Wash. U.L.Q. 433, 434 (1995)). The formation of such entities is not, however, intended to provide relief from licensure statutes for those individuals serving as agents of those persons seeking to acquire shares in a limited liability company. Indeed, Kentucky's Limited Liability Company Act provides that, "[e]xcept for those provisions concerning the personal liability of members, managers, employees, and agents of a limited liability company, nothing in this chapter

shall restrict limit, or expand in any matter the authority and duty of any regulating board to . . . [l]icense individual persons providing professional services...." KRS 275.010(a).

Kentucky has adopted a rigid rule precluding enforcement of commission agreements procured by unlicensed brokers with regard to transactions that involve real estate interests. It has no business broker statute. As articulated in *Kirkpatrick v. Lawrence*, the legislature could have set forth an exception to the Kentucky real estate licensure requirements for circumstances like these, where a party brokers a deal for a business which has real estate as an asset. *Kirkpatrick*, 908 S.W.2d at 130. It did not do so, and this Court declines to legislate by means of judicial construction in order to create one. Counts I and III of Lairsen's Complaint, alleging breach of contract and seeking recovery in quantum meruit, are without merit and will be dismissed.

**B. Plaintiff Cannot Enforce an Unwritten Contract for Compensation Which Takes the Form of a Partnership Contract When the Agreement is So Closely Related to a Real Estate Transaction**

Lairsen alleges in Count II of his Complaint that he, Figuerado, and Neves agreed to enter into a partnership or joint venture to purchase the membership interests in STG. In exchange for a 1/3 share in the interests and a salaried management position at the Grider Hill Marina, Lairsen avers that he was "to contribute his expertise in negotiating the purchase of marinas." [Compl. at ¶ 15.] He claims that he did so, but never received his share of

10

the deal. Simply stated, Lairsen avers that the parties agreed that he would become part of the partnership in exchange for his services as a broker. In other words, he would receive a share of the business rather than earning a cash commission from the buyers at closing on the transaction. Assuming for the sake of argument that this agreement ever existed, it is concerned with an agreement for payment or compensation for assisting another in the sale or lease of property, even though that leasehold was an asset of a limited liability company, shares of which were to be purchased. Further, there is no evidence that it was ever reduced to writing. As such, it falls within the Statute of Frauds and cannot be enforced.

The Commonwealth's codification of the Statute of Frauds provides that:

> No action shall be brought to charge any person:
>
> \*\*\*
>
> (6) Upon any contract for the sale or real estate, or any lease thereof for longer than one year;
>
> \*\*\*
>
> (8) Upon any promise, agreement or contract for any commission or compensation for the sale or lease of any real estate or for assisting another in the sale or lease of any real estate; or
>
> \*\*\*

> (9) Upon any promise, contract, agreement, undertaking or committment to loan money, to grant extend, or renew credit, or to make any financial accommodation including, but not limited to the purchase of realty or real property...
>
> unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith, or by his authorized agent.

KRS 371.010. Whether a an agreement is unenforceable due to the statute of frauds is an issue of law. *Tri-County Mortgage Co., Inc. v. Union Planters Bank, N.A.*, No. 2003-CA-000787-MR, 2004 WL 2672317 at *1 (Ky. App. 2004).

Any partnership agreement by and between Lairsen, Figuerado, and Neves, as alleged by Lairsen, for the purchase of the shares of STG was sufficiently related to the sale of real estate so as to trigger the application of the Statute of Frauds. *See Tri-County Mortgage Co., Inc.*, 2004 WL 2672317 at *1 (oral agreement to pay for services rendered by channeling potential mortgage customers to bank fell within the Statute of Frauds and was unenforceable). The agreement described by Lairsen, if it in fact existed, would be "[a] promise, agreement or contract for [a] commission or compensation for the . . . lease of . . . real estate or for assisting . . . in the sale or lease of any real estate." KRS 371.010(8). Upon application of the Statute of Frauds, no action

may be brought on the alleged agreement because it is not in writing, and Plaintiff's claim for breach of contract in Count II of his Complaint must fail.[3]

## IV. CONCLUSION

For all of the reasons set forth above, Plaintiff Lairsen's claims for breach of contract and quantum meruit must fail.

Accordingly, **IT IS ORDERED:**

(1) that Defendant Figuerado's Motion to Enlarge Page Limitation for His Reply in Support of Motion for Summary Judgment [Record No. 40] is **GRANTED**;

(2) that the Clerk shall file Defendant Figuerado's tendered Reply in Support of his Motion for Summary Judgment in the record of this matter; and

(3) that Figuerado's Motion for Summary Judgment [Record No. 30] is **GRANTED**.

This the 27th day of April, 2010.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

---

[3] The Court notes that obtaining the benefit of such a bargain might also be barred by application of the brightline rule against recovery of commissions on real estate transactions by unlicensed brokers announced in *Lockridge* and *Kirkpatrick*, as set forth in section III.A. above. No less, Plaintiff's Count I would also fail for the reasons described above in section III.B. as the unwritten agreement alleged therein would fall within subsection (8) of the Statute of Frauds.